UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PHYSICIANS SERVICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHPLAN SERVICES, INC., et al., <br><br> Defendants. | Case No. 3:18-cv-03730-JD <br><br> **ORDER RE PRELIMINARY INJUNCTION** <br><br> Re: Dkt. No. 151 |

In 2013, plaintiff California Physicians Service, which does business as Blue Shield of California (Blue Shield), outsourced patient enrollment, account management, billing, and other services to defendant Healthplan Services (HPS) under a Business Process Outsourcing Agreement (BPOA). Blue Shield found HPS's performance of the services to be unsatisfactory in virtually every respect, and filed this action in June 2018 for breach of the BPOA. *See* Dkt. No. 1. After a few rounds of pleadings motions, and the Court's dismissal of several claims, *see* Dkt. No. 73, the third amended complaint (TAC) is the operative complaint. Dkt. No. 111.

One of the contract claims in the TAC relates to a "Parental Guaranty" that Blue Shield signed in 2013 with HPH-TH Holdings, Inc. (HPH-TH), HPH Holdings Corp., and Healthplan Holdings, Inc., as guarantors of HPS. Dkt. No. 111, Exh. 1 at 239. Section 7(e) of the Parental Guaranty states that "at all times" up to termination, "the fair saleable value of the property of the Guarantor is and will be at least one hundred twenty percent (120%) in excess of the total liabilities of the Guarantor (including the maximum amount reasonably expected to become due in respect of this Parental Guaranty and all other contingent liabilities of the Guarantor)." *Id*. at 242. HPH Holdings Corp. and Healthplan Holdings, Inc. subsequently merged into HPS sometime in 2017. *See* Dkt. No. 151 at 3. HPH-TH did not merge with HPS.

1    Blue Shield seeks an injunction requiring HPS to satisfy the terms of Section 7(e) on the
2 ground that the obligations "now reside in HPS" after the mergers. *Id*. at 1.  HPS does not dispute
3 this proposition, and the Court accepts it for purposes of this order, without reaching any findings
4 of fact or binding conclusions about it at this time.

5    The request is denied.  The objections to evidence, Dkt. Nos. 163, 171, are terminated.
6 The Court did not rely on disputed evidence, and in any event, the rules of evidence are relaxed in
7 preliminary injunction proceedings. *See Upshaw v. Alameda County*, 377 F. Supp. 3d 1027, 1032
8 (N.D. Cal. 2019).

## DISCUSSION

### I. PROCEDURAL POSTURE OF BLUE SHIELD'S MOTION

Blue Shield's motion is peculiar in several respects.  To start, Blue Shield did not seek an injunction under Federal Rule of Civil Procedure 65, which is the rule expressly dedicated to preliminary injunction motions.  It moved instead under Rule 64, *see* Dkt. No. 151 at 1, which incorporates state law "to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 n.10 (1974).  These remedies include writs of attachment and similar state law procedures for the seizing of property in advance of trial and a judgment.  Fed. R. Civ. P. 64(b); *see also Reebok Int'l Ltd. v. Marnatech Enters. Inc.*, 970 F.2d 552, 558 (9th Cir. 1992) (Rule 64 "permits state seizure provisions to be used in federal courts.").  California law governs the Parental Guaranty, *see* Dkt. No. 111, Exh. 1 at 242-43, and the procedures for obtaining prejudgment seizures are stated in California Code of Civil Procedure Sections 481.010 - 493.060, which impose a number of specific requirements that must be satisfied.  California deems prejudgment seizures such as a writ of attachment to be "a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." *Martin v. Aboyan*, 148 Cal. App. 3d 826, 831 (1983).

Blue Shield never says why Rule 64 might apply here.  After citing it as the only grounds for its motion, *see* Dkt. No. 151 at 1, Blue Shield abandoned it in favor of arguments based on

California's general injunction statute, California Code of Civil Procedure Section 526. *See* Dkt. No. 151 at 6 *et seq*. In effect, Blue Shield took Rule 64 to the dance and left it at the door.

A good argument can be made that this is enough to deny the motion. Blue Shield made no meaningful arguments for an injunction under Rule 64 or the state prejudgment seizure provisions it imports, and yet Rule 64 is the sole grounds on which it moved. This unduly burdened HPS and the Court with burning resources on a phantom argument. The Court is also concerned that Blue Shield's reference to Rule 64 was a calculated effort to sidestep the hurdles it faced under the traditional injunction standards. Even so, the Court will decide the injunction request in the interest of putting it to rest.

## II. INJUNCTION ANALYSIS

### A. Choice of Law and Legal Standards

The problems with Blue Shield's motion extend beyond the Rule 64 misfire. By focusing on the California injunction statute, and barely acknowledging Rule 65, Blue Shield slights an important choice of law issue under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). This Court is sitting in diversity in a case that presents California state law contract claims. In this circumstance, *Erie* advises that the Court should apply federal procedural law and state substantive law to the contract claims. *See Hanna v. Plumer*, 380 U.S. 460, 471 (1965); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020). The application of this rule is not always easy because the "[c]lassification of a law as 'substantive' or 'procedural' for *Erie* purposes is sometimes a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). This has proven especially true when determining the law that should apply to decide the availability of a preliminary injunction in a diversity action. *See, e.g., Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988) (noting different case outcomes).

The question is acute here because CCP Section 526 delineates a variety of specific instances when an injunction may or may not be granted by a California court. For example, Section 526 expressly states that an injunction "cannot be granted" to "prevent the breach of a contract the performance of which would not be specifically enforced." Cal. Code Civ. Proc. § 526(b)(5) (providing an exception for a personal services contract not germane here). It

3

expressly allows an injunction to be granted when a party may do something in derogation of another's rights and "tending to render the judgment ineffectual." *Id*. § 526(a)(3). The interplay of Section 526 with our federal injunction practice under Rule 65 is the *Erie* issue raised by Blue Shield's motion.

Neither Blue Shield nor HPS did justice to this question. Blue Shield largely assumed, without meaningful analysis, that Section 526 governs its motion. *See* Dkt. No. 151 at 6. HPS took a closer look at the *Erie* question, but jumped to the conclusion that Rule 65 controls on the basis of a smattering of district court cases going that way. Dkt. No. 159 at 5-6. Neither side really tackled the issue, and in the absence of adequate briefing, the Court is not inclined to make extensive conclusions about the allocation of procedural and substantive issues under California law and federal practice.

Nor is that necessary to resolve Blue Shield's motion. Whether analyzed under CCP Section 526 or FRCP Rule 65, the result is the same: Blue Shield is not entitled to an injunction on the record before the Court. In both jurisdictions, an injunction is not available unless the plaintiff has demonstrated a likelihood of success on the merits, and the possibility of imminent and irreparable harm if relief is not granted. The federal formulation of these requirements is well-established. *See generally Michigan v. DeVos*, 481 F. Supp. 3d 984, 990-91 (N.D. Cal. 2020). Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (same). In our circuit, a plaintiff may also obtain a preliminary injunction under a "sliding scale" approach by raising "serious questions" going to the merits of the plaintiff's claims and showing that the balance of hardships tips "sharply" in his or her favor. *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018); *see also Vanguard Outdoor, LLC v. City of L.A.*, 648 F.3d 737, 740 (9th Cir. 2011).

1       While a plaintiff must establish all four of the *Winter* factors to obtain a preliminary
2   injunction, *see A Woman's Friend*, 901 F.3d at 1167, a demonstration of "a fair chance of success
3   on the merits, or questions serious enough to require litigation" is "an irreducible minimum" for
4   injunctive relief. *Airbnb, Inc. v. City and Cnty. of San Francisco*, 217 F. Supp. 3d 1066, 1072
5   (N.D. Cal. 2016) (citation omitted).

6       A showing of imminent irreparable harm is also essential. *See Winter*, 555 U.S. at 22;
7   *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) ("At a
8   minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed
9   to irreparable harm.") (citation omitted). That is because "the basis of injunctive relief in the
10  federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v.*
11  *Murray*, 415 U.S. 61, 88 (1974) (internal quotations and citations omitted).

12      So too under California state law. "Trial courts 'evaluate two interrelated factors when
13  deciding whether or not to issue a preliminary injunction. The first is the likelihood that the
14  plaintiff will prevail on the merits at trial. The second is the interim harm that the plaintiff is
15  likely to sustain if the injunction were denied as compared to the harm the defendant is likely to
16  suffer if the preliminary injunction were issued." *Amgen Inc. v. Health Care Servs.*, 47 Cal. App.
17  5th 716, 731 (2020) (quoting *ITV Gurney Holding Inc. v. Gurney*, 18 Cal. App. 5th 22, 28-29
18  (2017)); *see also West Coast Constr. Co., Inc. v. Oceano Sanitary Dist.*, 17 Cal. App. 3d 693, 702
19  (1971) (injunction will be denied "unless there is a reasonable probability" of success on merits).
20  While the harm assessment in California is typically presented as a balancing test, the California
21  Supreme Court has emphasized that a showing of irreparable harm to the plaintiff is required. To
22  "obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the
23  irreparable injury or interim harm that it will suffer if an injunction is not issued pending an
24  adjudication of the merits." *White v. Davis*, 30 Cal. 4th 528, 554 (2003). "Indeed, in order to
25  obtain injunctive relief the plaintiff must ordinarily show that the defendant's wrongful acts
26  threaten to cause *irreparable* injuries, ones that cannot be adequately compensated in damages."
27  *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1352 (2003) (emphasis in original).
28

California and federal law both measure irreparable harm in terms of the traditional equitable concept of the inadequacy of damages and other legal remedies. In the federal formulation, "[m]ere injuries, however substantial, in terms of money, time and energy" are not enough to warrant injunctive relief. *Sampson*, 415 U.S. at 90; *see also Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) (monetary injury is not irreparable harm). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90 (internal citations omitted); *see also Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994) (plaintiff seeking injunction must show that legal remedy of damages is inadequate).

The same holds in California. An injunction may be issued "[w]hen pecuniary compensation would not afford adequate relief." Cal. Code Civ. Proc. § 526(a)(4). "[T]o obtain an injunction a plaintiff ordinarily must show that the defendant's wrongful acts threaten to cause irreparable injury, meaning injury that cannot adequately be compensated in damages." *Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1167 (2006) (citing *Intel Corp.*, 30 Cal. 4th at 1352).

### B. CCP Section 526

The prohibition of injunctions to prevent a breach of contract in Section 526 is a specific substantive embodiment of the injunction standards. It bars an injunction for contracts that cannot be specifically enforced. Cal. Code Civ. Proc. § 526(b)(5). "Specific performance of a contract may be decreed whenever: (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate." *Union Oil Co. of Cal. v. Greka Energy Corp.*, 165 Cal. App. 4th 129, 134 (2008) (quotation omitted). As is true for injunctions generally, the fifth element about the inadequacy of a legal remedy requires proof that money damages would not be sufficient to address the injury. *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822, 832 (2002). "No principle of equitable jurisprudence is more firmly stablished than this." *Id*. at 830.

Overall, California and federal law are in perfect alignment on the fundamental prerequisites for injunctive relief, with the substantive qualification that California presumptively prohibits an injunction to prevent a breach of contract that cannot be specifically performed. This makes short work of denying Blue Shield's motion. In an apparent effort to improve its odds, Blue Shield tries to sidestep the specific contract-related bar in Section 526(b)(5) by pointing to more general grounds permitting an injunction such as Section 526(a)(3), which covers situations involving actions "tending to render the judgment ineffectual." *See* Dkt. No. 151 at 7-8. That will not do. Section 526(b)(5) is specifically on point here, and it is this provision that will determine whether an injunction is available to Blue Shield, not the more general propositions that Blue Shield urges.

As the record currently stands, an injunction is not authorized by California law. Blue Shield asks to enjoin HPS from breaching the guarantor obligations in Section 7(e) of the Parental Guaranty. Under Section 526(b)(5), such an injunction is available only if Section 7(e) is subject to a specific performance decree.

It is not. Blue Shield has not demonstrated that the core term in Section 7(e) -- "fair saleable value" -- is sufficiently definite to permit specific performance. *Union Oil Co.*, 165 Cal. App. 4th at 134. The Parental Guaranty did not define fair saleable value, which Blue Shield acknowledged at the injunction hearing, *see* Dkt. No. 178 at 5:19-20; and Blue Shield has not proffered any extrinsic evidence that provides a clear and undisputed definition of it. Blue Shield has not shown that it is a term in common professional usage such that persons skilled in contractual guaranties and similar financial practices would understand it the same way. To the contrary, the parties sharply disagree about the meaning of the term, and proffer competing interpretations of it. *See, e.g.,* Dkt. No. 151 at 11-13; Dkt. No. 159 at 8-9. Consequently, the Court cannot say that fair saleable value is sufficiently definite to "make the precise act which is to be done clearly ascertainable," as specific performance demands. *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 126 (2015) (quoting Cal. Civil Code § 3390(5)). This conclusion has an adverse consequence for Blue Shield's likelihood of success on the merits of its claim, as will be discussed shortly.

1  Blue Shield also has not demonstrated that an award of damages would be inadequate to
2  remedy a breach of Section 7(e), which is another element required for specific performance.
3  *Union Oil Co.*, 165 Cal. App. 4th at 134.  It suggests that the guaranty was intended to give it
4  "peace of mind," *see* Dkt. No. 168 at 3, but that in itself says nothing about the sufficiency of a
5  damages award to restore its spirits and make it whole if it proves that Section 7(e) was breached.
6  So too for Blue Shield's fretting about HPS's ability to pay a judgment, should that day come to
7  pass.  Such an unspecific concern is too speculative and inchoate to constitute irreparable harm.
8  *See Caribbean Marine*, 844 F.2d at 674.

9  Had Blue Shield adduced evidence that HPS were in imminent danger of insolvency or
10 failing as an ongoing concern, there might have been grounds for establishing irreparable harm.  It
11 did not tender such evidence, and the undisputed facts in the record do not indicate that HPS faces
12 any type of imminent financial failure that would seriously call into doubt its ability to cover any
13 guarantee obligations under Section 7(e).  Blue Shield estimates its damages from the breach of
14 the BPOA to be "at least" $20 million, Dkt. No. 151 at 2, which is a convenient reference point for
15 evaluating HPS vis-à-vis a potential damages award.  HPS states, without disagreement by Blue
16 Shield, that it was acquired by Wipro Limited in 2016 for $460 million.  Dkt. No. 159 at 2; Dkt.
17 No. 160 ¶ 7.  Wipro is said to be a publicly traded company with more than 185,000 employees
18 worldwide, and with "revenues in excess of $9 billion."  *Id*.  Even assuming Blue Shield hits a
19 home run and wins a $20 million judgment, which is an entirely speculative outcome at this
20 juncture, Wipro is a substantial entity for Blue Shield to pursue should HPS itself not be able to
21 pay, and Blue Shield has not established otherwise.  Blue Shield also glosses over a general
22 liability cap of $15 million on damages for a breach of the BPOA.  Dkt. No. 111, Exh. 1 at 66
23 (Section 30.1.2).  HPS states that it has maintained a credit line with a $15 million borrowing
24 capacity since 2017, Dkt. No. 159 at 5, and offered Blue Shield a letter of credit backed by "a
25 bank account with a cash balance of at least $15 million," *id*. at 3.  Blue Shield again does not
26 dispute any of this, or account for it in claiming a threat of irreparable harm.  Overall, Blue Shield
27 has failed to proffer facts demonstrating why a damages award would be inadequate for a breach
28 of Section 7(e), should it prove one at trial.

A final nail for Blue Shield is the existence of a third guarantor, HPH-TH. Blue Shield did not account for this guarantor in a meaningful way, and makes only the rather cryptic statement that it "does not move against HPH-TH at this time, but reserves its right to do so." Dkt. No. 151 at 3 n.5. The availability of this guarantor alone, without any of the other evidence in the record, is probably enough to forestall the possibility of irreparable harm.

Blue Shield suggests that it is free to ignore all of this because imminent irreparable harm may simply be assumed when a security pledge is in dispute. *See* Dkt. No. 151 at 13. That goes too far. Blue Shield relies on *Marine Midland Tr. Co. of New York v. Alleghany Corp.*, 28 F. Supp. 680 (S.D.N.Y. 1939), but this older trial court decision is readily distinguishable. *Marine Midland* was decided primarily under New York law on indentures. *See id.* at 683. Needless to say, the court was not called upon to account for the substantive prohibition of an injunction to prevent a breach of contract in Section 526, and California law on specific performance, which govern here. Even so, the court did considerably more than just presume irreparable harm, as Blue Shield urges. The court found that the plaintiff was likely to prevail because the terms of the contract were clear and undisputed, and that the defendant had only one source of cash to meet its obligations, which if spent on other purposes would leave nothing available to the plaintiff. *See id*. at 683-84. As discussed, Blue Shield has not made any similar showings here. It also bears mention that Blue Shield did not identify any California state court decisions that have followed *Marine Midland*, and certainly none in the context of an injunction.

Blue Shield's reference to *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431 (9th Cir. 1984) is equally misplaced. *Safeco* mentions *Marine Midland* only in the context of a motion to dismiss a claim against a surety for a tax bond. *Id*. at 433. *Safeco* shines no light on injunctive relief or the application of Section 526 in the circumstances presented here. It surely did not conclude that Blue Shield is relieved from showing irreparable harm to get an injunction.

It is also true that *Marine Midland* and *Safeco* involved surety obligations that were definite and well-defined. In *Safeco*, the surety agreement authorized payment of a precise sum "upon demand." *Safeco*, 739 F.2d at 432. In *Marine Midland*, the agreement required a security amount based on a known quantity of outstanding bonds. *Marine Midland*, 28 F. Supp. at 682.

9

1   The clarity in those agreements contrasts sharply with the indefiniteness of "fair saleable value" in
2   the Parental Guaranty.

### C. FRCP Rule 65

Consequently, Section 526(b)(5) bars the injunction Blue Shield seeks. This outcome effectively eliminates the need for any analysis under Rule 65. This is so because the main teaching of *Erie* is that "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Tr. Co. of New York v. York*, 326 U.S. 99, 109 (1945). In the injunction context, this means that "a party suing in diversity to obtain an injunction" should not get one in federal court "if state law clearly rejects the availability of that remedy." *Sims*, 863 F.2d at 647 (reversing injunction issued under Rule 65 in breach of contract case because California state law barred this type of relief). The bedrock rule set by *Sims* is that Section 526 constrains the Court's equitable powers in this diversity action.

Even so, an independent analysis of the traditional federal injunction factors would show that an injunction could not have been granted under those factors. Blue Shield has not shown a likelihood of success on the merits of the Section 7(e) claim. It is not at all clear that its interpretation of the meaning of fair saleable value captures the parties' intentions in the Parental Guaranty, or even reflects common usage. This uncertainty is further compounded by the fact that the evidence adduced so far about HPS's assets and liabilities for purposes of Section 7(e) is complicated and conflicting. The parties hotly debate the details and ultimate meaning of HPS's balance sheets, financial statements, and other accounting documents. *See, e.g.,* Dkt. No. 151 at 11-12; Dkt. No. 159 at 3-5. In light of this disputed evidence, Blue Shield has not demonstrated that it is likely to prevail on the claim that HPS breached Section 7(e). At best the question warrants further litigation, and in all probability will require a jury trial to resolve.

The absence of irreparable harm for specific performance applies with full force to the parallel federal injunction inquiry. The Court notes that Blue Shield also has not demonstrated that it acted promptly on its concerns about Section 7(e). HPS states, without dispute, that it had

notified Blue Shield by March 2017 that two of the original guarantors had merged into HPS. Dkt. No. 159 at 3. Blue Shield did not file this motion for injunctive relief until August 2020. Dkt. No. 151. It did not present a good explanation for this long delay, which cuts against a finding of irreparable harm. *See Garcia*, 786 F.3d at 746.

## CONCLUSION

Blue Shield has not demonstrated grounds for an injunction under California law or Rule 65. Consequently, an injunction is denied.

**IT IS SO ORDERED.**

Dated: March 9, 2021

JAMES DONATO
United States District Judge